# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| WAYNE BRONDEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:25-cv-00546-AGF |
| ) | |
| HELANA LENARD, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon multiple filings by self-represented Plaintiff Wayne Brondel. On May 5, 2025, the Court received three documents from Plaintiff. ECF No. 3. To the extent these documents request emergency relief from the Court in the form of a preliminary injunction or temporary restraining order, they will be denied for the reasons discussed below.

### Plaintiff's Filings

Plaintiff is a civilly-committed offender being held at the St. Louis Forensic Treatment Center, a Missouri Department of Mental Health facility. Plaintiff's first document is titled "Motion for Emergency Order." ECF No. 3 at 1-5. In this undated motion, Plaintiff states that he is being "drugged" against his will. *Id.* at 1-3. Plaintiff "ask[s] this Court to please make a phone call and stop these forced drugs." *Id.* at 2. Plaintiff attached a "Notice of Clinical Due Process Hearing," dated April 25, 2025, stating Plaintiff's treating psychiatrist, Asad Qalbani, had determined that Plaintiff needs to be involuntary medicated as part of his treatment and that a due process hearing on this decision would be held on April 28, 2025. *Id.* at 3. This notice also informed Plaintiff that he would hear evidence on the basis for his involuntary medication at the hearing, that he could ask questions, present evidence on his own behalf, and that he would be assisted at the hearing by a patient advocate. *Id.*

Second, Plaintiff filed an untitled document dated April 26, 2025, complaining about the conditions of confinement at the Forensic Treatment Center in relation to access to legal books, handling of mail, and availability of hot water.  *Id.* at 6-9.  In this document, Plaintiff asks the Court to name a "legal rep" for Plaintiff and others being held at the Forensic Center.  *Id.* at 7.  This representative would not give legal advice but provide case numbers, contact information for the Court, contact information for patients' attorneys and guardians, and legal materials.  *Id.* at 7-8.

The third document filed by Plaintiff is titled "Motion to Stop Forced Drugs" and dated April 29, 2025.  *Id.* at 11-14.  In this filing, Plaintiff references multiple cases that he has pending in the United States District Court for the Western District of Missouri.[1]  Plaintiff alleges that when the defendants named in his Western District cases received notice of Plaintiff's case filings, they "retally ate" against him by forcing drugs on him.  ECF No. 3 at 11.  Next, Plaintiff appears to be describing his April 28th Due Process Hearing when he states:

> Mon at 1:00 PM meeting or hearing held.  100% no evidence presented, just all words, I in response stated all or allegations nothing on video will show in fact the video will show that allegation are false.  Well believe it or not they decided to drug me I only got hours to appeal but I no longer have a patient advocate and I must call my attorney to come in and explain, yes 100% what they are doing.

*Id.* at 11-12.  In conclusion, Plaintiff asks the Court "to please stop the drugs being forced upon" him. *Id.* at 13.

---

[1] One of the cases referenced by Plaintiff is *Brondel v. Thumann*, No. 2:25-cv-04068-BCW (W.D. Mo. filed Apr. 7, 2025).  Based on a review of this case on PACER, the federal court public access system for electronic court records, Plaintiff challenges his civil confinement and refers to a Missouri circuit court order that Plaintiff be held "6 month[s] or longer" as a "mental health commit" on March 24, 2025.  *Id.* at ECF No. 1.  The Court notes that the Missouri court that ordered Plaintiff's confinement is Callaway County, Missouri, which is located in the jurisdiction of the Western District.  *See* 28 U.S.C. § 105 (b)(4).

2

**Discussion**

I.  **Legal Standard for Preliminary Injunction or Temporary Restraining Order**

The Court construes these pleadings as requesting a preliminary injunction or temporary restraining order to prohibit the involuntary medication of Plaintiff.[2] "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). These factors are also considered to determine the propriety of a temporary restraining order. *See S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project,* 877 F.2d 707, 708 (8th Cir. 1989).

"In balancing the equities no single factor is determinative." *Dataphase,* 640 F.2d at 113. The relevant inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* The burden of proof is on the party seeking injunctive relief. *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir. 1987).

In addition, "[a] court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits. Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (internal citation omitted).

---

[2] To the extent Plaintiff complains about conditions of confinement such as access to legal materials, hot water, and mail, he does not seek any immediate relief in regard to these conditions, so the Court does not construe these issues as relevant to the request for emergency relief here.

3

**II.      Forced Medication Under the Fourteenth Amendment**

The question as to whether a state may forcibly medicate a civilly committed individual has both substantive and procedural aspects.  *See Washington v. Harper*, 494 U.S. 210, 220 (1990). "The substantive issue involves defining the protected constitutional interest, as well as identifying the conditions under which competing interests may outweigh it," while the "procedural issue concerns the minimum process required by the Constitution." *Morgan v. Rabun*, 128 F.3d 694, 696 (8th Cir. 1997).  In other words, "the substantive issue is what factual circumstances must exist before the State may administer antipsychotic drugs to the prisoner against his will; the procedural issue is whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient." *Harper*, 494 U.S. at 220.

Regarding the substantive component, the Due Process Clause of the Fourteenth Amendment gives an individual "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Id.* at 221-22.  As such, the state is permitted to treat a seriously mentally ill inmate with antipsychotic drugs against his will if the inmate is a danger to himself or others, and the treatment is in the inmate's medical interests. *Id*. at 227. *See also Morgan*, 128 F.3d at 697 (explaining that with regard to substantive due process, a committed individual's due process rights are not violated if he is a danger to himself or others).

To meet the procedural requirements of due process in the involuntary administration of antipsychotic drugs to a prisoner, there must be: (1) notice; (2) the right to be present at an adversarial hearing; (3) the right to present witnesses; and (4) the right to cross-examine witnesses. *See Harper*, 494 U.S. at 235. *See also Doby v. Hickerson*, 120 F.3d 111, 113 (8th Cir. 1997) (explaining that the "minimal constitutional requirements for satisfying procedural due process when a state involuntarily administers antipsychotics to a prisoner" consists of "an

4

independent decisionmaker as well as for notice, the right to be present at an adversary hearing, and the right to present and cross-examine witnesses").

### III. Emergency Relief will be denied

After weighing the *Dataphase* factors listed above, the Court finds that Plaintiff has failed to demonstrate at this stage of the proceedings that he is likely to succeed on the merits of his claims and that he will suffer an immediate and irreparable injury if I do not grant the requested relief.  Plaintiff's statements seeking relief are wholly conclusory and lacking in any factual support.  Plaintiff admits to receiving notice of the involuntary medication and notice of a hearing on the matter.  Plaintiff attended the hearing with a patient advocate.  He does not deny that he had the right to present witnesses and the right to cross-examine witnesses.  Plaintiff admits that he was told that he could appeal, and he states that he will be contacting his attorney about the matter.  Plaintiff does not state what result, if any, has been decided about his appeal.  The facts alleged demonstrate adequate due process in the administration of involuntary medication.

As for Plaintiff's substantive due process rights, Plaintiff does not state the reason given by his treating psychiatrist for his forced medication or make any allegations as to why this reasoning is unconstitutional.  A plaintiff alleging that forced medication is not in their best interest must provide more than "threadbare allegations" to support their claim.  *See Thomas v. Eschen*, 928 F.3d 709, 714 (8th Cir. 2019) (noting that plaintiff's claim that he had been "medicated" for the "wrong reasons" did not demonstrate "what, when, where, why, or how [the] drugs were administered").  Plaintiff here fails to provide any support for his claim.

Finally, Plaintiff's Complaint filed to initiate this matter names as defendants three nurses employed at the Forensic Center, and the Center's chief executive officer.  *See* ECF No. 1 at 1-3.  Plaintiff's treating psychiatrist who ordered his involuntary medication, Dr. Asad Qalbani, is not

5

a named defendant.  *See* ECF No. 3 at 3.  In his Complaint, Plaintiff requests release from confinement and complains about the conditions of confinement at the Forensic Center.  He appears to be seeking review of the Missouri state court opinion which led to his civil commitment – like the relief he seeks in his multiple pending cases in the Western District of Missouri court.  As discussed above, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."  *Devose*, 42 F.3d at 471.  In this case, although the allegations of Plaintiff's Complaint are difficult to decipher, there does not appear to be a relationship between the injury claimed in the motion and the conduct asserted in the Complaint.  Plaintiff's Complaint does not even name Plaintiff's treating psychiatrist as a defendant.  In addition, to the extent Plaintiff is arguing that defendants named in his pending Western District cases are retaliating him by ordering forced medication, such allegations are properly made in a motion before the Western District Court in one of Plaintiff's pending cases there.

For all these reasons, Plaintiff's request for emergency relief will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for emergency order [ECF No. 3] is **DENIED.**

Dated this 15th day of May, 2025.

                                                  */s/ Audrey G. Fleissig*
                                                  AUDREY G. FLEISSIG
                                                  UNITED STATES DISTRICT JUDGE